# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

**Claxton Williams #N62439**

       **Plaintiff,**

v.                                        Case No. 04 C 5701

**Kenneth Briley, et al.,**

       **Defendants.**                   Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

The Plaintiff, currently an inmate at Menard Correctional Center, has brought this pro se civil rights action pursuant to 42 U.S.C.§1983. He claims that the defendants, three officers at Stateville Correctional Center ("Stateville"), violated his constitutional rights by using excessive force against him. All other defendants and claims were dismissed by the court. This matter is before the court for consideration of the defendants Hunter and Banks' motion for summary judgment.[1] Plaintiff was sent the LR 56.2 Warning for *pro se* plaintiffs regarding summary judgment. Defendants submitted LR 56.1 statement of material facts and Plaintiff submitted a "response in affidavit form" and a cross motion for summary judgment, but no LR 56.1 Facts. For the reasons stated in this order, Defendants' Hunter and Banks' motion is granted and the Plaintiff's motion is denied.

---

[1] Defendant Davis was served by certified mail by the U.S. Marshal's office on December 14, 2004, which delivery was signed for on December 18, 2004. However, a waiver form was never sent in to the Marshal. Thus, though service was executed on this defendant pursuant to Fed. R. Civ. P. 4, he never filed an appearance or answer in the case. Because the case is being dismissed for other reasons, the issue of service for this defendant is moot.

1

**Standard of Law**

Summary judgment will be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *O'Connor v. DePaul Univ.,* 123 F. 3d 665, 669 (7th Cir. 1997). In weighing a motion for summary judgment, the court must take the facts in the light most favorable to the party opposing the motion and draw all reasonable inferences in that party's favor. *Bahl v. Royal Indemnity Co.,* 115 F. 3d 1283,1289 (7th Cir. 1997); *Condo v. Sysco Corp.,* 1 F. 3d 599, 601 (7th Cir. 1993). The party opposing the motion must present evidence of a triable issue of material fact. *See Vance v. Peters,* 97 F. 3d 987, 990 (7th Cir. 1996). The non-moving party is required to go beyond the pleadings and designate specific facts showing a genuine issue for trial. *Bank-Leumi Le-Israel, B.M. v. Lee,* 928 F. 2d 232, 236 (7th Cir. 1991). A fact is material when it would determine the outcome under the governing law. *Whetstine v. Gate Rubber Co.,* 895 F.2d 388, 392 (7th Cir. 1990). A material fact is genuinely in dispute when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

**Background**

Plaintiff's remaining claims in his amended complaint-- after this court's December 6, 2004 order dismissing all other claims and defendants--are that on August 30, 2002 and on October 17, 2002, officers used excessive force against him: on August 30 he claims that unnamed tactical officers used excessive force on him and, Defendant Hunter retaliated against him for filing emergency letters and ignored his serious medical condition; on October 17, during a shakedown of Plaintiff's cell, defendant officer Banks used excessive force by hitting him in

the head with a plastic shield while Plaintiff was handcuffed. He claims that defendant Davis kicked him and rammed an oak stick into Plaintiff's rectum during this incident. He further alleges that defendant Hunter was the superintendent in charge of the segregation unit where Plaintiff was housed at Stateville during this incident, on October 17, 2002. The original complaint was filed August 30, 2004 and the amended complaint was filed November 23, 2004.

For purposes of this motion for summary judgment, the important allegations relate only to whether or not Plaintiff completed the administrative remedies provided at Stateville through the grievance procedure for each of these two incidents. He claims in his amended complaint that he submitted emergency grievances. He never alleges that he ever submitted any non-emergency grievances for either incident.

**August 30, 2002 incident**

Plaintiff attaches many exhibits interspersed with his amended complaint, some of which are unrelated to the remaining claims, some are letters, and one is a grievance dated September 30, and received by the Administrative Review Board ("ARB") on October 11. In this grievance he fails to name any of the tactical officers involved in the incident. This five page grievance discussed medical issues, issues related to receiving food and closing his "chuck hole" in his cell door, his failure to follow a direct order, and then the tactical team coming to his cell, handcuffing him, and then slamming their plastic shield on his head, jabbing him in his kidneys, and further beating him.

He claims that he followed the procedure for emergency grievances, and submitted letters to the warden, but then, because he did not receive a response from the warden, he submitted a grievance directly to the ARB. He does not claim to have followed the routine

3

grievance procedure, but he does allege that he followed the emergency grievance procedure.

On October 29, the ARB instructed Plaintiff that he could not submit the grievance directly to them, without proof that he had first discussed the grievance with the counselor, and then submitted a written grievance to the grievance officer. (Def. Facts # 7 and Exh. C). They sent the grievance back to Plaintiff. Since evidence shows that his grievance was determined not to be an emergency, the issue becomes only whether he followed the routine non-emergency grievance procedure after being told to do so on October 29, 2002.

**October 17, 2002 incident**

In the amended complaint, Plaintiff attaches a grievance form dated November 17, 2002, that does not have any "received" stamp on it, but does have his own lengthy affidavit attached to it, dated November 12, 2002, outlining once again, his refusal to accept a meal, and the tactical team coming to his cell to beat him with the plastic shield and oak stick. For this grievance, he names the defendants Davis and Banks as part of the tactical team.

In Plaintiff's response to the motion for summary judgment, he fails to provide any evidence of his having submitted this November 2002 grievance. Instead he states that he submitted letters dated December 27 and December 29, 2002, to the warden and assistant warden inquiring about his November grievance. He further states that his personal encounter with the assistant warden wherein he told him of the incident "should in and of itself, be exhaustion of my administration [sic] remedies." (Res. p. 4). He claims again that defendants impeded his efforts to use the grievance system by refusing to respond to his emergency grievance in a timely manner. He reiterates that he followed the *emergency* grievance procedure. He fails to address the issue of whether he followed the *proper* grievance procedure, but appears to be claiming that

4

his own determination that his claim was an emergency was sufficient to validate his choice of procedures, and that defendants failed to follow that procedure.

### Defendants' 56.1 Facts

Defendants' statement of facts illustrate that Plaintiff failed to follow the proper grievance procedures or complete the grievance process for his claims. In defendants' LR 56.1 Statement of Material Facts, with supporting evidence, they show that Plaintiff did the following: According to prison records, Plaintiff did not file a grievance on either September 30, 2002, or November 17, 2002. (Facts #5). On October 11, 2002, Plaintiff submitted his September 30 dated grievance directly to the Administrative Review Board (ARB) and did not first discuss the problem with the counselor, nor submit the written grievance to the grievance officer, as required for non-emergency grievances. (Facts #6). Thus, it was sent without the necessary responses from the counselor or the grievance officer. On October 29, the ARB told Plaintiff in writing that he needed to provide these two responses with his appeal. (Def. Exh. C and Facts #7).

But Plaintiff did not submit his grievance to the counselor, as instructed, until December 2, 2002, more than 3 months after the alleged excessive force occurred and past the deadline for filing a grievance. (Facts #8). Plaintiff did actually have time to comply with the prison grievance rules after receiving the October 29, 2002 ARB notice, if he had submitted his grievance correctly any time before November 30, and still be within the time period required by the rules. He did not do so, until three days past the deadline.

### Grievance Procedure

The grievance procedure followed at Stateville is set forth in 20 Ill. Admin. Code

§504.800 *et seq.*, and in defendants' memorandum (p.7). First, within sixty days of an incident,[2] a prisoner is required to begin the grievance procedure by attempting to resolve the complaint with the counselor. If unsuccessful , he may file a written grievance on a grievance form and leave it in the box for the grievance officer. The grievances are then reviewed weekly, and written findings are made to the warden or his designee. The inmate is informed of this decision. If the inmate is not satisfied with this response, he may appeal in writing to the Director of the Department of Corrections, who then determines if a hearing is warranted before the ARB. If so, then the ARB holds a hearing and submits its findings to the Director. The Director then makes his own final determination. The process is completed when the ARB issues a final decision. *See Dixon v. Page*, 291 F.3d 485, 489 (7th Cir. 2002); *Sanders v. Elyea,* 1998 WL 67615 *3 (N.D.Ill. February.10, 1998). These rules must be followed to comply with the exhaustion of administrative remedies requirement. *Pozo v. McCaughtry,* 286 F. 3d 1022 (7th Cir. 2002).

**Emergency Grievances**

Stateville has a different system for its emergency grievance procedure, 20 Ill. Admin. Code§ 510.840:

"A committed person may request a grievance be handled on an emergency basis by forwarding the grievance directly to the Chief Administrative Officer.

 a) If the Chief Administrative Officer determines that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the committed person, the grievance shall

---

[2] There is a question not addressed in defendants' memorandum or exhibits as to whether the time frame for filing a grievance back in 2002 was the current sixty days after an incident, or was six months, the former rule. The court notes that the current sixty day rule was in effect and therefore applies in this case. Ill. Admin. Code Section 504.810,( effective September 1, 2001, with amendments through March 29, 2002). Plaintiff's first alleged incident was August 30, 2002, his first grievance was dated September 30, 2002 and received by the ARB on October 11, 2002.

be handled on an emergency basis.

b) The Chief Administrative Officer shall expedite processing of the grievance and respond to the committed person, indicating what action shall be or has been taken."

Further, Defendants attach as Exhibit D, the affidavit of Sandra Hawkins who is the keeper of grievance records at Stateville at the time in question. She explains that if a grievance that an inmate characterizes as an emergency is determined not to be so, the grievance is returned to the grievance officer and then to the inmate. In her affidavit she states that Plaintiff's September 30, 2002 grievance, (originally received on October 11, and returned to Plaintiff on October 29 as previously discussed) was received again on December 2, 2002 and was determined not to be an emergency and on December 9 it was sent back to the Plaintiff. (See attachment to Exh. D).

The system is further explained in Exhibit E, affidavit of Gary Drawve who reviews grievance appeals. He explains those issues which are considered emergencies and can be grieved directly to the warden and then to the ARB, and Plaintiff's grievance does not fit any of those categories.[3] Further, if an inmate claims a grievance is an emergency, he must forward it to a Chief Operating Officer ("COO") and if only if the COO determines that there is a substantial risk of imminent personal injury or serious or irreparable harm to the inmate, he will handle on an emergency basis. Only after that review, can an inmate appeal the emergency grievance to the ARB. Plaintiff determined that he had an emergency grievance, but when the ARB instructed

---

[3] According to Mr. Drawve, emergency matters which may be grieved directly to the ARB include the following issues: use of psychotropic medication, protective custody placement; disciplinary matters from another prison, and other issues from a prison not the prison where the inmate is currently confined. Past use of excessive force is not one of the allowed emergency matters.

7

him to proceed with a non-emergency grievance, by following the procedure of first talking to his counselor, and then filing a written grievance to the grievance officer, he ignored that instruction, until after the deadline for doing so had passed.

Finally, Defendants claim that no grievance at all was filed on November 17, and Plaintiff does not supply any evidence to contradict this statement. (Def. Facts #9&10, Exh. E). *Bank-Leumi Le-Israel, B.M. v. Lee,* 928 F. 2d 232, 236 (7th Cir. 1991).

**Discussion**

The PLRA provides that a prisoner cannot bring suit under § 1983 concerning prison conditions unless he first exhausts his administrative remedies. 42 U.S.C. § 1997e(a); *Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). To properly exhaust his administrative remedies, a prisoner must take all the steps required by the prison's grievance system. *Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir.2004); *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir.2002). Further, exhaustion is a precondition to filing suit, so a prisoner's attempt to exhaust available administrative remedies in the midst of litigation is insufficient. *See Ford,* 362 F.3d at 398; *Perez v. Wis. Dep't of Corr.,* 182 F.3d 532, 536-37 (7th Cir.1999).

To properly exhaust remedies under § 1997e(a) a prisoner "must file complaints and appeals in the place, and at the time, the *prison's* administrative rules require." *Pozo,* 286 F.3d at 1025 (emphasis added); *see also Freeman v. Francis,* 196 F.3d 641, 644 (6th Cir.1999) ( "[T]he exhaustion requirement in § 1997e(a) is directed at exhausting the prisoner's administrative remedies in the corrections system, and investigation by another agency does not satisfy the requirement of the statute."). Indeed, the purpose behind the exhaustion requirement is to give corrections officials the opportunity to address complaints internally before a federal suit is

initiated. *See Porter,* 534 U.S. at 524-25.

"Failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving, *Walker v. Thompson,* 288 F.3d 1005, 1009 (7th Cir.2002); *Massey v. Helman (Massey I),* 196 F.3d 727, 735 (7th Cir.1999)." *Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004). (Defendants assert that exhaustion is a prerequisite to bringing the lawsuit. This is incorrect.) But now that they have raised this defense, the court addresses the central question, did Plaintiff comply with the administrative rules or not, and if not, did Plaintiff's failure to comply with the letter of the rules of the grievance procedure at Stateville mean that he failed to exhaust, or would substantial compliance, such that defendants were on notice of his grievance, be sufficient?

In *Lewis v. Washington,* 300 F.3d 829, 834 (7th Cir. 2002), because plaintiff's cause of action accrued after the PLRA's "invigorat[ion] [of] the exhaustion prescription," *Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 988 (2002), the substantial compliance doctrine was not available. *See also, Smith v. Zachary,* 255 F.3d 446, 452 (7th Cir.2001) (suggesting in dicta that the substantial compliance doctrine applies only to pre-PLRA causes of action, but declining to decide the issue because prisoner failed to raise substantial compliance in the district court).

With these exhaustion requirements now outlined, the court applies them to the undisputed material facts in Plaintiff's case. He submitted an emergency grievance to the ARB. He was told that he didn't have the appropriate proof that he had gone through the grievance procedure, i.e., he needed responses from the counselor and grievance officer to show that he had properly proceeded through the grievance process. Although given sufficient time within the prison rules to do that, he failed to do so. Only after the time had passed for him to comply, did

9

he begin the grievance process again, and once again submitted an emergency grievance, not following the normal grievance procedure.

While the court does not condone the behavior about which Plaintiff complains, Plaintiff failed to follow the institution's procedures to exhaust administrative remedies, even after being told what to do and given time to do so. Apparently, he continues to believe that he can submit anything as an emergency grievance, and then complain afterward that defendants have obstructed his attempt to follow the grievance procedure. He must now realize that the grievance procedure must be followed in order to comply with the requirement of exhaustion of administrative remedies. Such compliance does not include self determined emergency status. For this reason, he cannot proceed in this case.

### **Plaintiff's cross motion for summary judgment**

Plaintiff filed a cross motion for summary judgment, claiming that the case should be dismissed because defendants failed to answer his claims, and instead only filed a motion for summary judgment and only about the exhaustion issue. Therefore, he argues that there is no genuine issue of material facts. Plaintiff failed to follow any of the rules required regarding a motion for summary judgment and his argument is groundless. Defendants are not required to address any of the merits of Plaintiff's claims if they assert the affirmative defense of failure to exhaust administrative remedies. *See* discussion *supra,* page 5. Therefore, Plaintiff's motion is denied.

### **CONCLUSION**

It is therefore ordered that the defendants' Hunter and Banks' motion for summary

judgment is granted . This case is dismissed without prejudice for failure to exhaust administrative remedies. Any pending motions are denied as moot.

E N T E R:

*James B. Zagel*

James B. Zagel
UNITED STATES DISTRICT COURT

DATED: June 21, 2005